# EXHIBIT "B"

IOU Financial
Business Lending. Simplified.

## Promissory Note

## Created on:Apr-21-2026 09:53AM

**IOU CENTRAL INC.**

**PROMISSORY NOTE FOR COMMERCIAL LOAN ("NOTE" or "LOAN")**

This Note is effective on the Effective Date set forth below when received by IOU Central Inc. 600 TownPark Lane, Suite 100 Kennesaw, GA 30144 ("Lender") at its office. The Note incorporates any Guaranty of this Loan.

Contract Number: 468488

Closing Date: Apr-21-2026

Borrower Name: BAHS OPERATING INC. ("Borrower")

Borrower Address: 355 CAMP RD THOMPSON, PENNSYLVANIA, 18465

Borrower Phone: 570-756-2016

Borrower Email: mshabsels@gmail.com

Gross Loan Amount / Principal: $388,500.00

Origination Fee: $47,250.00

Disbursement Amount: $341,250.00

Weekly Payment Amount: $7,583.34

Total Number of Payments: 66

Interest Expense: $112,000.00

Total Repayment Amount: $500,500.00

**1. BUSINESS PURPOSE LOAN**

Borrower represents and warrants to Lender that the proceeds of this Loan will be used **strictly for business and/or commercial purposes** for this Borrower and not for any agricultural, personal, family, household, or other purpose.

**2. BORROWER'S PROMISE TO PAY**

In return for a loan to Borrower, the receipt of which is hereby acknowledged, Borrower promises to pay the Total Repayment Amount as set forth in the Loan Summary, above, to the order of Lender or Lender's assignee. Borrower understands that Lender, or anyone who takes this Note by assignment, may enforce this Note. For convenience, Lender and any assignee are referred to herein as "Lender." All amounts are expressed, and all payments must be made, in U.S. dollars.

**3. PAYMENT TERMS**

Borrower agrees to pay sums under this Note, and the "Loan Summary" incorporated by reference as follows: Beginning on Apr-29-2026 (the "First Payment Date"), and for the term of this Loan, Borrower will make 66 payments (including the final payment) of $7,583.34 (each a "Payment Amount") and a final payment of $7,582.90 (the "Final Payment Amount") to Lender, each payment to be made based on the payment frequency disclosed in the Loan Summary (each payment due date, a "Payment Date"). The Payment Amount due on any Payment Date may be increased to pay for accrued expenses or fees or for acceleration of the Loan. The Total Repayment Amount and any unpaid fees or other charges due under this Note that have not been paid before such date are due and payable on Jul-28-2027 (the "Maturity Date"). Each payment received shall be applied as follows: (i) first to the payment of Late Charges and Insufficient Funds Charges (ii) second, to the reduction of the Interest Expense (including any Additional Interest Expense added in accordance with Paragraph 5 of this Note); and (iii) third to the reduction of the Principal balance. Borrower may prepay the entire Principal balance at any time without penalty.

**4. ACH DEBITS**

Borrower will make all payments by automatic withdrawal from an account that Borrower selects using an automated clearinghouse (ACH) or other electronic fund transfer. Borrower acknowledges and agrees that the deposit account from which payments will be debited will be a business purpose account and not an account used for personal, family, or household purposes. If Borrower closes the selected account, or the account is otherwise inaccessible such that Lender is unable to withdraw payments, Borrower will notify Lender at least 5 business days prior to any such closure, change or inaccessibility and Borrower will authorize Lender to withdraw payments from another business purpose account that Borrower designates. Borrower authorizes Lender to increase the amount of any scheduled ACH debit entry or assess multiple ACH debits for the amount of any previously scheduled payment(s) that was not paid as agreed and any unpaid fees or charges. This authorization is to remain in full force and effect until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank reasonable opportunity to act on it.

**5. INTEREST, PREPAYMENT**

**Interest Expense**

Borrower will pay to Lender Interest Expense in such amount equal to a rate of 32.0% of the Borrower's Loan Amount of $350,000.00 payable Weekly over the term of the loan as part of the Total Repayment Amount.

**Prepayment and Renewal**

If (i) Borrower is current on its scheduled payments with respect to this Loan, (ii) Borrower has not breached the terms of this Note, and, (iii) while this Loan is outstanding, Borrower enters into a new promissory note for a commercial loan with Lender where the proceeds of which are used to repay this Loan in full, Lender may discount any remaining interest by up to 20%. Alternatively, if the Loan is satisfied in full prior to maturity then Lender may discount the remaining Interest Expense by up to 20% as an early payment discount.

**Additional Interest Expense: (Post-Maturity Interest)**

If any portion of the Total Repayment Amount is not satisfied by the Maturity Date of the Loan, Lender may charge, and Borrower will be obligated to pay, additional interest ("Additional Interest Expense") at the monthly periodic rate of 2.5% each month any balance remains unpaid. The Additional Interest Expense will be calculated on a monthly basis on the balance outstanding at the start of each monthly repayment period after the Maturity Date. The unpaid balance plus the Additional Interest Expense shall be paid post-maturity under the same schedule as the prior Loan payments.

Extending the Loan is a risk for Lender, which requires a continuing yield on the Loan and its timely satisfaction, which Lender funded in anticipation of satisfaction by the Maturity Date. This Additional Interest Expense is compensatory, not punitive, and a reasonable estimate of Lender's injury or probable loss of injury as the

parties have agreed. Any Guarantor of this Loan likewise agrees to be liable for this Additional Interest Expense.

**6. EVENTS OF DEFAULT**

Borrower will be in default (each an "Event of Default") if: (i) any amount due pursuant to this Note is not received by Lender when due; (ii) Borrower breaches any other warranty, representation, covenant, term or condition of this Note; (iii) a default under any guaranty agreement or instrument, whether now existing or hereafter committed or made, which was provided to Lender to enhance the credit underwriting of this Loan; (iv) any bankruptcy, insolvency or receivership proceeding is commenced by or against Borrower and is not dismissed within 30 days; (v) Borrower has a change in legal status, change in ownership, or ceases to exist; or (vi) Borrower takes additional financing from a credit card advance, cash advance company, merchant cash advance, or an additional working capital loan during the term of this Loan without Lender's prior written permission.

**7. ORIGINATION FEE**

A non-refundable origination fee paid by the Borrower to IOU Central Inc. in the amount of $47,250.00 will be deducted from the Borrower's Gross Loan Amount of $388,500.00, so the loan proceeds delivered to the Borrower will be $341,250.00 (the "Disbursement Amount"). If a broker was involved in helping secure financing, we will pay the broker's fee from the origination fee you paid.

**8. LATE CHARGE**

If any Payment Amount is not received when due, the Lender may impose, and Borrower will pay, to the extent not prohibited by applicable law, a Late Charge equal to the lesser of: (i) 5% of the unpaid Payment Amount; or (ii) at Lender's election, an amount up to the maximum amount permitted by applicable law to defray the expenses incurred by Lender in handling and processing the delinquent payment and to compensate Lender for the loss of the use of the delinquent payment. This paragraph may not be construed as an agreement by Lender to extend any Payment Date or Maturity Date, nor as a waiver of any other Lender right or remedy by reason of the occurrence of any Event of Default.

**9. INSUFFICIENT FUNDS CHARGE & MANUAL PAYMENT CHECK PROCESSING FEE**

To the extent not prohibited by applicable law, Borrower agrees to pay a fee of $15.00 for each payment that Borrower has authorized, but which cannot be completed because the ACH debit is rejected by Borrower's bank.

**10. COLLECTION, MODIFICATION AND SERVICING FEES**

Borrower agrees to pay collection, payment modification, and servicing fees as follows:

(i) Modification Fee: $300 for services related to Lender's review and approval of Borrower's request for modification of this Note.

(ii) Collection Fee: 25% of the outstanding balance (including any Interest Expense or Additional Interest Expense) owed at the time collection activities are initiated,

(iii) Legal Fee: 15% of the outstanding balance (including any Interest Expense or Additional Interest Expense) owed at the time Lender retains an attorney for collection, along with any court costs incurred to enforce this Note,

(iv) Stacking Fee: $2,500 if after signing this Note, Borrower takes additional financing from a credit card advance, cash advance company, merchant cash advance, or an additional working capital loan during the term of this Loan without Lender's prior written permission. The parties agree that the Stacking Fee is a good faith estimate of the damages caused by this breach of the Agreement including the increased resources required to be expended by Lender to respond to the breach, the increased risk to Lender caused by the Stacking, including the potential for having to respond to competing creditors and other damages and expenses caused by the breach.

**11. ADMINISTRATIVE FEES**

Lender assesses a post-closing $695.00 administrative fee to cover personal and business credit report fees, ACH set up fees, boarding into servicing platform, bank account verification and ongoing business surveillance, processing loan application, underwriting due diligence on the Borrower and Guarantor(s), initial wire fees, and any subsequent wires associated with other lender payoffs. This fee is automatically debited within three business days after the Effective Date of the Loan from the same business purpose deposit account referenced in Paragraph 4.

**12. RIGHTS AND REMEDIES UPON DEFAULT**

If any obligation required under this Note is not received when due, or upon another Event of Default as determined by Lender in its sole discretion, and without notice of any kind to Borrower or any Guarantor, unless expressly required by applicable law, then, at Lender's option but subject to the Arbitration section of this Note, Lender may exercise any one or more of the following rights and remedies: (a) the Note will become immediately due and payable without notice of dishonor or presentment and Lender may immediately debit from Borrower's account(s) the total sum owed, including but not limited to (i) the whole of the Principal sum of this Note, (ii) Late Charges, and all other sums as provided for in this Note including any Interest Expense and Additional Interest Expense, if applicable, and (iii) all sums advanced and costs and expenses incurred by Lender in connection with this Loan, including attorneys' fees and any other costs incurred by Lender in enforcing Borrower's obligations under this Note; and (b) the Lender is a secured lender as to all Collateral described in the Security Agreement set forth in Paragraph 20, and Lender may: (i) require Borrower and/or any Guarantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral, (ii) enter upon the property of Borrower and/or any Guarantor, provided Lender does so without a breach of the peace or a trespass, to take possession of and remove the Collateral, (iii) sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Borrower and/or any Guarantor, and may sell the Collateral at any public auction or private sale. Borrower and/or any Guarantor agree that the requirements of reasonable notice prior to sale of Collateral for purposes of Article 9 of the Uniform Commercial Code shall be met if such notice is given at least 10 calendar days before the time of the sale or disposition.

No failure by Lender to exercise, and no delay in exercising, any right, remedy, or power hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy or power hereunder preclude any other or further exercise thereof or the exercise of any other right. Subject to the Arbitration section of this Note, these remedies provided are cumulative and not exclusive of any remedies provided by law.

**13. WAIVERS**

Borrower and all others who become liable for the payment of all or any part of the amounts due under this Note do hereby severally waive: (i) presentment and demand for payment; (ii) notice of dishonor, protest and notice of protest, acceleration and intent to accelerate, non-payment and all other notices of any kind, except for notices expressly provided for in this Note; and (iii) any defense, including but not limited to the defense of the statute of limitations in any action or proceeding brought for the obligations due, arising under or related to this Note aside from the defense of payment in full. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower under this Note or the right of Lender to take further action without further notice to Borrower.

**14. UNCONDITIONAL PAYMENT**

Borrower is and shall be obligated to pay principal, Interest Expense, and all amounts which shall become payable hereunder absolutely and unconditionally and without any abatement, postponement, diminution or deduction and without any reduction for counterclaim or setoff. In the event that at any time any payment received by Lender hereunder shall be deemed by a court of competent jurisdiction to have been a voidable preference or fraudulent conveyance under any bankruptcy, insolvency or other debtor relief law, then the obligation to make such payment shall survive any cancellation or satisfaction of this Note or return thereof to Borrower and shall not be discharged or satisfied with any prior payment thereof or cancellation of the Note, but shall remain a valid and binding obligation enforceable in accordance with the terms and provisions hereof, and such payment shall be immediately due and payable upon demand.

**15. NOTICES**

All notices permitted or required under this Note shall be effective only if in writing addressed to the Borrower or Lender, as appropriate. Any changes of the Borrower's address shall be provided promptly to Lender. Notice shall be deemed to have been given by Lender and received by Borrower when mailed by Lender or, if sent electronically, when so sent by Lender, but in no event later than: (i) the date delivered to the Borrower by messenger; (ii) one business day after e-mailing Borrower; (iii) five business days after mailing within the United States by certified or registered mail; (iv) two business days after the date deposited with an overnight courier for next day delivery; or (v) one business day after transmission by facsimile. Notice from Borrower to Lender is deemed to have been given when actually received by Lender.

Any notice to Borrower will be provided at the address, facsimile number, or email address shown at the beginning of this Note. Any notice to Lender will be provided at the address shown at the top of Page 1 of this Note or the address of any subsequent assignee of this Note.

**16. FINAL AGREEMENT**

This Note constitutes the final agreement of Borrower and Lender as to the Loan and supersedes any prior agreement or understanding. This Note may be modified, amended, waived, extended, changed, discharged, or terminated only by a writing executed by Lender. Borrower and Lender agree that Lender may send a change in terms

notice, to the extent allowed by law, modifying the terms of this Note; and that Borrower will be bound to the terms of the Note as modified therein, regardless of whether Borrower signs or otherwise executes such notice, change in terms, or modification.

**17. SEVERABILITY**

A determination that any provision of this Note is invalid or unenforceable shall not affect the validity or enforceability of any other provision. The remaining provisions of this Note shall remain operative and in full force and effect and shall not be affected by such determination.

If a law, which applies to this Loan and which sets maximum loan charges, is finally interpreted so that the Interest Expense or other loan charges collected, or to be collected in connection with this Loan, exceed the limits permitted by law, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the amount Borrower owes under this Note, or by making a direct payment to Borrower.

**18. CREDIT REPORTING**

Borrower authorizes Lender to obtain credit reports on Borrower and any owner who signs this Note or Guaranty at any time and as frequently as Lender deems necessary before this Note is paid in full.

Borrower and any owner who signs this Note or Guaranty acknowledges that its performance and/or default under this Note may be reported by Lender to credit reporting agencies.

**19. ELECTRONIC CONTRACTING AGREEMENT**

Borrower agrees that this Note is an electronic record executed by Borrower's authorized representative using an electronic signature. Borrower agrees that, by executing this Note with an electronic signature, Borrower is signifying its intent to enter into this Note, and that this Note is legally valid and enforceable in accordance with its terms to the same extent as if it had been executed using Borrower's written signature. Borrower further agrees that Lender's deposit of the Loan Amount into Borrower's designated bank account shall constitute Lender's acceptance of the terms of this Note.

**20. AUTHORITY**

Borrower and its representative executing this Note represent that Borrower and representative have full power, authority, and legal right to execute and deliver this Note, and that this Note constitutes a legal, valid, and binding obligation of Borrower, enforceable in accordance with the Governing Law as set forth in this Note.

**21. GENERAL SECURITY AGREEMENT**

As security for the due and punctual payment of all amounts due or to become due and the performance of all obligations of Borrower from time to time under this Note and all extensions, renewals and amendments of any of the foregoing, Borrower hereby pledges, transfers, assigns, delivers, mortgages, conveys, and grants a security interest to a continuing lien upon and security interest in and to all the following of Borrower's now owned or hereafter acquired, created or arising property (a) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions; and (b) all other tangible and intangible personal property, including, but not limited to: (i) inventory, (ii) equipment, (iii) investment property, including certificated and uncertificated securities, securities accounts, security entitlements, commodity contracts, and commodity accounts, (iv) instruments, including promissory notes, (v) chattel paper, including tangible chattel paper, and electronic chattel paper, (vi) documents, (vii) letter of credit rights, (viii) accounts, including health care insurance receivables, (ix) deposit accounts, (x) general intangibles, including payment intangibles and software, and (xi) as- extracted collateral as such terms may from time to time be defined in applicable Georgia law ("Collateral"). The term "Collateral" as used herein, in addition to including the foregoing, shall mean any funds, guaranties, agreements, or other property or rights or interests of any nature whatsoever, or the proceeds thereof, which may have been, are, or hereafter may be, mortgaged, pledged, assigned, transferred, or delivered directly or indirectly, by or on behalf of Borrower or any other party to Lender or to the holder of this Note of the Borrower, or which may have been, are, or hereafter may be held by any party as trustee or otherwise, as security, whether immediate or underlying, for the performance of this Note, or the payment of the Liabilities or any of them or any security therefor. "Collateral" also includes all accessions, attachments, accessories, parts, supplies, and replacements for the collateral, all products, proceeds and collections of and all records and data in relation to them. Lender and/or Lender's Representative may file any financing statement, lien entry form, or other document to perfect, amend, or continue Lender's security interest in the Collateral, and Borrower shall cooperate with Lender and its Representative on all necessary action to protect Lender's security interest in the Collateral. "Lender's Representative" means any entity or individual designated by Lender to serve in such capacity. Borrower shall not perform or fail to perform any act which impairs the Collateral, in which all applicable exemptions are waived, Lender may exercise all available rights and remedies under the Security Agreement as to the property/Collateral as provided by this Note, and/or by applicable Georgia law.

**22. NO ASSIGNMENT**

Borrower may only assign its rights and obligations under this Note with Lender's written agreement, to which any merger, takeover or combination of Borrower with another entity is subject. Lender's interest in this Note, the related security instrument, any related loan documents, and any or all servicing rights, or grant participations, or issue pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement may be sold, transferred, assigned, delegated, participated, pledged, or encumbered by Lender, without Borrower's consent. Consistent with any retained servicing rights granted to Lender, Lender shall have full power and authority, acting alone, in its own name, to do or cause to be done any and all things in connection with such servicing and administration of this Note which it may deem necessary or desirable including filing suit in its own name to enforce this Note.

**23. GEORGIA GOVERNING LAW**

Unless prohibited by applicable law, this Note shall be governed by and construed, applied, and enforced in accordance with federal law and the laws of the State of Georgia without regard to principles of conflicts of law, including the perfection, the effect of perfection and the priority of a security interest in the collateral for this Note in accordance with the Uniform Commercial Code and other applicable law. Provisions in this Note concerning arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq.

**24. CHOICE OF FORUM / WAIVER OF JURY TRIAL AND CLASS ACTION / LIMITATION OF LIABILITY**

Jurisdiction: Borrower acknowledges that: (i) Borrower's application for this Loan was received by Lender at its offices in Kennesaw, Georgia; (ii) Lender completed its underwriting process resulting in the making of this Loan at its offices in Kennesaw, Georgia; (iii) this Note is effective on the Effective Date set forth above and when received by Lender at its offices in Kennesaw, Georgia; (iv) Lender provides proceeds to Borrower from its funding department located in Georgia; (v) Lender processes all transactions in Georgia; (vi) Lender services the transaction in the State of Georgia; and (vi) all payments are deemed made when received by Lender at its offices in Kennesaw, Georgia.

Borrower acknowledges that the signing of this Note is a culmination of a series of acts carried on in Georgia. Borrower acknowledges that in the event of litigation arising under this Note, that litigation in Georgia spares the Borrower the costs of transporting Georgia evidence elsewhere. Borrower agrees that the State of Georgia is the most convenient forum for suit, as it relates to this Note.

Except as provided below, any and all claims, lawsuits or disputes of any kind between the parties arising out of or relating to this Note (a "Dispute") shall be instituted in and resolved by a state or federal court in the State of Georgia.

Each Party knowingly, intentionally, voluntarily, and irrevocably, with and upon the advice of counsel, (a) submits to personal jurisdiction in the State of Georgia over any suit, action, or proceeding by any person arising from or relating to this Note, (b) agrees that any such action, suit or proceeding may be brought in and resolved by a state or federal court in Cobb County, Georgia, or at the sole option and discretion of Lender, in any state or federal court of competent jurisdiction in the county where the collateral, a Borrower, Guarantor, or other party to the action, suit, or proceeding is located, (c) submits to the jurisdiction of each such court in any such suit, action, or proceeding and, (d) waives any objection that it may have to the laying of venue of any such action, suit, or proceeding in any of such courts.

Each party waives any challenge to the jurisdiction or venue of such courts over such claims, lawsuits or disputes. Service of process of the summons, complaint and any other process which may be served in any such action or proceeding may be made by mailing or delivering a copy of such process to the Borrower and to any Guarantor at their last known address, including any address provided in connection with this Note.

Waiver of Jury Trial Action/Class Action. LENDER, BY ACCEPTANCE HEREOF, AND BORROWER, BY EXECUTION HEREOF, KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, TO THE EXTENT PERMITTED BY APPLICABLE LAW. LENDER AND BORROWER, THEIR AGENTS, ASSIGNS, AFFILIATES, SUCCESSORS, AND TRANSFEREES KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHT TO CONDUCT AND/OR PARTICIPATE IN A CLASS ACTION AS TO ANY CLAIMS IN LAW AND/OR EQUITY AS TO THIS NOTE AND/OR LOAN, WHO MAY ONLY BRING ANY SUCH CLAIMS ONLY INDIVIDUALLY, NOT AS CLASS MEMBERS OR IN A REPRESENTATIVE CAPACITY ON BEHALF OF ANY PERSON OR ENTITY. THE

PARTIES AGREE THIS WAIVER IS CONSCIONABLE UNDER THE CIRCUMSTANCES EXISTING AT THE TIME OF THE MAKING OF THIS NOTE AND/OR LOAN.

LIMITATION OF LIABILITY. BORROWER, ITS AUTHORIZED AGENT, REPRESENTATIVE, ASSIGNS, AFFILIATES, SUCCESSORS, AND TRANSFEREES, KNOWINGLY AND VOLUNTARILY WAIVE AND AGREE THAT THE LIABILITY OF LENDER, ITS AGENTS, ASSIGNS, AFFILIATES, SUCCESSORS, AND TRANSFEREES UNDER THE NOTE AND/OR LOAN ARE LIMITED TO ACTUAL CONTRACTUAL DAMAGES ESTABLISHED FROM LENDER'S ALLEGED CONTRACTUAL BREACH OF THE NOTE, NOT EXTRA-CONTRACTUAL DUTIES, WHICH LENDER DOES NOT ASSUME, WITH BORROWER'S DAMAGES LIMITED TO THE AMOUNT OF FEES AND INTEREST EARNED ON THE NOTE, NOT OTHER CLAIMS IN LAW AND/OR EQUITY, FOR WHICH LENDER IS NOT LIABLE FOR PUNITIVE, EXEMPLARY, LIQUIDATED, CONSEQUENTIAL, NOMINAL, OR INCIDENTAL DAMAGES, INCLUDING LOST BUSINESS PROFITS/BUSINESS INFORMATION, BUSINESS INTERRUPTION, LOST EARNINGS, EXPENSES, ATTORNEY'S FEES AND COSTS, EVEN IF LENDER WAS ADVISED OF SUCH POSSIBLE LOSSES. BORROWER AGREES THIS LIMITATION IS REASONABLE IN RELATION TO THE NOTE AND/OR LOAN, UNDER WHICH ANY ALLEGED DAMAGES ARE SOLELY ECONOMIC, ENFORCEABLE, AND CONSPICUOUS, THE PARTIES ARE SOPHISTICATED AND EXPERIENCED IN MATTERS SUCH AS THIS NOTE AND LOAN, AND THIS NOTE AND LOAN CONSTITUTES AN ARM'S-LENGTH TRANSACTION; WHICH THEY HAD EQUAL OPPORTUNITY TO NEGOTIATE, AND EQUAL BARGAINING POWER, AND THE OPPORTUNITY TO BE REPRESENTED BY COUNSEL.

**25. ARBITRATION AGREEMENT**

PLEASE REVIEW THIS SECTION CAREFULLY, AS IT INCLUDES WAIVERS OF CERTAIN LEGAL RIGHTS, INCLUDING THE RIGHTS TO HAVE JURIES OR COURTS RESOLVE DISPUTES, TO SERVE AS A PRIVATE ATTORNEY GENERAL OR IN A REPRESENTATIVE CAPACITY, AND TO PARTICIPATE IN A CLASS ACTION LAWSUIT .

Lender and Borrower agree that upon a demand from Lender or Borrower at any time, any Dispute will be resolved by binding arbitration and judgment upon the award rendered by the arbitrator may be entered into any court having jurisdiction thereof. The term "Dispute" shall have the broadest possible meaning. "Dispute" includes any claim in contract, tort, statute, or otherwise between the Lender and Borrower arising out of or relating to the rights and obligations set forth in this Note. "Dispute" includes any disagreement over the interpretation and scope of this Arbitration Agreement and/or the arbitrability of the Dispute itself. This Arbitration Agreement applies to the parties to the Note and their heirs, successors, assigns, and third parties related to any Dispute.

To demand arbitration, Lender or Borrower must send the other party, by certified mail, a written notice of intent to arbitrate. If Lender and Borrower do not reach an agreement to resolve the Dispute within thirty (30) days after the notice is received, during which time the parties agree any applicable statute of limitation shall be tolled, Lender or Borrower may commence an arbitration proceeding with New Era ADR ("New Era") before a single arbitrator under the New Era Expedited Arbitration rules ("New Era Rules") OR JAMS Inc. ("JAMS") before a single arbitrator under the JAMS Streamlined Arbitration Rules & Procedures ("JAMS Rules"). Upon request, Lender will promptly reimburse Borrower for any arbitration filing fee exceeding the amount required to file a lawsuit concerning the Dispute in state court. Any other fees required for arbitration will be allocated according to rules of the New Era or JAMS proceeding, whichever is applicable. The arbitrator may limit pre-hearing discovery in accordance with the applicable New Era Rules or JAMS Rules. Any in-person hearing will be conducted at a location that is reasonably convenient to both parties, as determined by the arbitrator. The arbitrator may award the same damages as a court, including but not limited to reasonable attorney fees and expenses, if allowed by law.

Lender and Borrower agree that by entering into this Note they are waiving the right to trial by jury. Further, Lender or Borrower may bring claims against one another only in their individual capacity and not as part of any purported class action, a private attorney general action, or any other representative proceeding. Lender and Borrower also agree that the arbitrator may not consolidate proceedings for more than one person's claims and may not otherwise preside over any form of representative or class proceeding. If the preceding prohibition against consolidated, class, or aggregated claims is found unenforceable, then the entirety of this Arbitration Agreement (except for this sentence) will be null and void.

This transaction involves interstate commerce, so the Arbitration Agreement is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and not by any state law regulating the arbitration of disputes. The arbitrator must apply substantive law consistent with the FAA. The arbitrator must follow statutes of limitation and privilege claims. Any arbitration decision is final and binding except to the extent that an appeal may be made under the FAA. Any arbitration decision rendered pursuant to this Arbitration Agreement may be entered and enforced in any court with jurisdiction. Except as required by law or for the purpose of entering the arbitration decision in court, no party or arbitrator may disclose the existence, content, or results of the arbitration.

Both parties may use lawful self-help remedies. This includes any lawful set-off or repossession and sale of any product, item, collateral, or security (if any) that is part of the transaction. Both parties may seek remedies in furtherance of the agreement to arbitrate which do not claim money damages. This includes equitable individual relief in furtherance of the agreement to arbitrate, pre-judgment seizure, injunction(s), or equitable relief.

This Arbitration Agreement will remain effective unless the parties sign an agreement stating it is not or unless the Borrower opts out as allowed below. The Arbitration Agreement remains effective even if Borrower rescinds the transaction, defaults, renews, prepays, or pays in full. It remains effective if the Note is discharged through bankruptcy and remains effective despite the Note's termination, amendment, expiration, or performance.

Borrower may opt out of this Arbitration Agreement by sending Lender a notice that Borrower does not want the Arbitration Agreement to apply to this Note. For any opt out to be effective, Borrower must send an opt out notice to the following address by registered mail within 30 days after the date of this Note: IOU Financial, 600 TownPark Lane, Suite 100 Kennesaw, GA 30144, Attention: Arbitration Opt Out.

**26. MISCELLANEOUS**

**Telephonic Communications** – Borrower and Guarantor(s) expressly consent to receiving calls and messages, including auto-dialed and pre-recorded calls and SMS messages (including text messages) from Lender, its affiliates, marketing partners, agents, and other calling at Lender's request or on its behalf, at any telephone numbers that Borrower and/or Guarantor(s) have provided, may provide in the future, or are otherwise in Lender's possession. Borrower and Guarantor(s) agree that such communications may be initiated using an automated telephone dialing system.

**Recordkeeping and Audit Requirements** – Lender shall have no obligation to maintain any electronic records or any documents, schedules, invoices or any other paper delivered to Lender by Borrower in connection with this Note or any other agreement other than as required by law. Borrower will at all times keep accurate and complete records of Borrower's accounts and Collateral. Borrower shall, at Lender's request, deliver to Lender (i) schedules of accounts and general intangibles; and (ii) any such other information regarding the Collateral as Lender shall request. Lender, or any of its agents, shall have the right to call any telephone numbers that Borrower has provided or may provide in the future or otherwise in the Lender's possession, to inspect or audit records and make copies of any books, records, receipts, or other documents that relate to Borrower's accounts and Collateral or other transactions between the parties thereto and the general financial condition of Borrower. Lender shall be allowed to make photocopies of any such records. If Borrower was referred to Lender for this Loan by a third party (the "Referring Party"), then Borrower consents to Lender sharing certain reasonable information about Borrower with the Referring Party for purposes of Referring Party verifying or auditing loans made through such Referring Party's referrals.

**Time of Essence** – Time is of the essence to all terms and provisions in this Note.

NOTICE TO BORROWER: EXECUTE THIS NOTE ONLY AFTER YOU READ THE ENTIRE NOTE, EVEN IF OTHERWISE ADVISED. PLEASE CONSIDER REVIEWING THE NOTE WITH COUNSEL BEFORE SIGNING IT.

BY CHECKING THIS BOX BORROWER, BY ITS AUTHORIZED REPRESENTATIVE, AGREES TO BE BOUND BY THE TERMS OF THIS COMMERCIAL PROMISSORY NOTE, AND VERIFIES THAT THE INFORMATION PROVIDED BY THEM AS TO THIS NOTE IS TRUE AND CORRECT, WHICH THEY READ, UNDERSTAND AND AGREED TO BY THEIR BELOW AUTHORIZED ELECTRONIC AND/OR WET INK SIGNATURE UNDER 28 U.S.C. §1746, AND HAS SIGNED, SEALED, AND DELIVERED THIS NOTE.

**You acknowledge and agree that this Agreement, including any conflict, dispute or claim arising under or related to this Agreement, is subject to Georgia law, jurisdiction and venue. Any litigation, dispute or claims must be brought in Georgia, subject to arbitration as provided in the Arbitration section of this Agreement.**

Borrower Representative: BAHS OPERATING INC.

MICHAEL SHABSELS

Date Executed: Apr-21-2026

(SEAL)

*REVISED 4/2026*

IOU Financial
Business Lending. Simplified.

## Authorization for Electronic Debits Agreement

## Created on:Apr-21-2026 09:53AM

**IOU CENTRAL INC.**

**AUTHORIZATION FOR ELECTRONIC CREDITS/DEBITS**

**BORROWER'S AUTHORIZATION:**

I (we) acknowledge that this Authorization for Electronic Debits (this "Authorization") is provided for the benefit of IOU Central, Inc., the Lender / Payee herein, and the Financial Institution of BAHS OPERATING INC., Borrower herein, and is provided in consideration of Borrower's Financial Institution(s) agreeing to process debits against Borrower's Account(s) as noted below (identified herein).

**BANK NAME:** Northern Bank & Trust
**ACCOUNT NUMBER:**[redacted]7900

**BANK NAME:** BANK OF AMERICA
**ACCOUNT NUMBER:** [redacted]9454

Borrower warrants and guarantees that all persons whose signatures are required to sign on this Account have signed this Authorization, either manually or by electronic signature.

Borrower hereby authorizes Lender to draw on Borrower's Account with Financial Institution the lump sum payment due on each due date on the registered business loan Borrower owes under the related Promissory Note(s) which Borrower entered into with the Lender, including for the following purposes:

- Repaying the principal and interest due on each due date;
- Paying any insufficient fund fees and any other applicable fees; and
- Paying any other obligation due pursuant to the terms of the Promissory Note(s).

Borrower acknowledges that provision and delivery of this Authorization to the Payee constitutes delivery by Borrower to its Financial Institution. Any delivery of this Authorization to you constitutes delivery by Borrower.

Borrower certifies that all information provided with respect to Borrower's Account is accurate and Borrower undertakes to inform the Lender, in writing, of any change in the Account information provided in this Authorization prior to the next payment due date.

Borrower acknowledges that Borrower's Financial Institution is not required to verify that any payment was issued in accordance with the particulars of this Authorization, including, without limitation, the amount of any payment.

Borrower acknowledges that Borrower's Financial Institution is not required to verify that any purpose of payment for which any payment was debited has been fulfilled by the Lender as a condition to honoring the pre-authorized debit issued or caused to be issued by the Lender on Borrower's Account.

The undersigned certifies that they are authorized to sign on behalf of Borrower, as designated on the business bank account, any and all checks, drafts, acceptances and other instruments and/or orders for payment and/or withdrawal of any and all moneys, credits, items and property at any time held by said Bank for the account of the company.

Borrower certifies that the above designated account was established for business purposes and not primarily for personal, family, or household purposes.

Borrower agrees to be bound by the Rules and Operating Guidelines of Nacha.

Borrower understands that Lender is not responsible for any fees charged by Borrower's bank as the result of any credits or debits initiated under this agreement.

Borrower understands and accepts this pre-authorized credit and debit plan and wishes to enroll therein.

By executing this agreement, Borrower authorizes Lender to disburse the Disbursement Amount (as defined in the Promissory Note by initiating an ACH credit, wire transfer, or similar means to the checking account indicated above.

Furthermore, the undersigned agrees that any personal information provided through this Authorization will be used for the purposes identified above and may be disclosed to the Lender's financial institution. The physical file containing personal information, if any, will be kept at:

IOU Central Inc. 600 TownPark Lane, Suite 100, Kennesaw, GA 30144

Only the employees, agents and representatives of the Payee who require it in the course of their duties and the Payee's financial institution will have access to the personal information contained in Borrower's file. Borrower understands that they have the right to request access to the file containing Borrower's personal information and the correction of inaccurate or obsolete information by contacting the Payee at https://ioufinancial.com/contact-us. Borrower understands that the personal they provide through this Authorization is governed by the terms of the Payee's Privacy Policy located at https://ioufinancial.com/privacy-policy, and recognize that Borrower has read, understood and agreed to the terms of the Payee's Privacy Policy.

**LENDER / PAYEE:**

IOU Central Inc. 600 TownPark Lane, Suite 100, Kennesaw, GA 30144

**IDENTIFICATION OF BORROWER / PAYOR:**

BAHS OPERATING INC.

MICHAEL SHABSELS

355 CAMP RD THOMPSON, PENNSYLVANIA, 18465

Northern Bank & Trust

Apr-21-2026



Signature(s) (as it/they appear(s) on the account):

*REVISED 7/2025*

IOU Financial
Business Lending. Simplified.

**IOU CENTRAL INC.**

**GUARANTY AGREEMENT**

This Guaranty is effective on the Effective Date set forth below when received by IOU Central Inc. 600 TownPark Lane, Suite 100, Kennesaw, GA 30144 ("Lender") at its offices.

Guarantor Name: 90 PLEASANT VALLEY STREET LEASING LLC

Guarantor Address: ______________________

______________________

Guarantor Phone: ______________________

Guarantor Email: mshabsels@gmail.com

Borrower Whose Commercial Loan Obligation is Guaranteed: BAHS OPERATING INC.

Commercial Promissory Note Number: 468488

Original Principal Amount of Guaranteed Debt: $ 350,000

This Guaranty governs the terms and conditions of Guarantor's guaranty of the Commercial Loan obtained by Borrower from Lender. Guarantor understands that Lender, or anyone who takes assignment of the Promissory Note for Commercial Loan ("Note") evidencing Borrower's obligation to Lender, may enforce this Guaranty. For convenience, Lender and any assignee of the Note and this Guaranty are referred to herein as "Lender."

If Borrower defaults on its obligations, and you fail to pay the Guaranteed Debt upon demand, your default under this Guaranty may become a part of your consumer report file.

BY SIGNING BELOW, GUARANTOR AGREES TO BE BOUND BY THE TERMS OF THIS GUARANTY

Signature: Michael Shabsels (Mar 23, 2026 13:37:06 EDT)

Date: 23/03/26

1. GUARANTEED DEBT

Guarantor agrees that the Guaranteed Debt shall consist of all amounts owed by Borrower under the Note, including: (i) the Principal amount; (ii) Note Interest; (iii) Default Interest; (iv) Late Charges, (v) Insufficient Funds Charges; (vi) amounts owed as a consequence of a declared Event of Default and acceleration by Lender; and (vii) Lender's other costs and expenses of enforcing the Note including, but not limited to, attorneys' fees, and the costs of any court proceeding to enforce the Note against Borrower.

2. UNCONDITIONAL GUARANTY

In consideration of the loan made by Lender to Borrower, Guarantor hereby absolutely and unconditionally guarantees both payment of, and collection of, the Guaranteed Debt when due under the terms of the Note. Guarantor will pay the Guaranteed Debt in full, without setoff or counterclaim upon Lender's demand. This Guaranty shall not be affected by the genuineness, validity, regularity or enforceability of the Note, or by circumstances relating to the Note that might otherwise constitute a defense to this Guaranty. Guarantor acknowledges that there may be more than one Guarantor of the Guaranteed Debt and agrees that, in such circumstances, each Guarantor shall be joint and severally liable for the Guaranteed Debt.

3. CONTINUING GUARANTY

This Guaranty is a continuing and irrevocable guaranty of the Guaranteed Debt and shall remain in full force and effect until the Guaranteed Debt, and any other amounts payable under this Guaranty, are paid in full. This Guaranty shall continue to be effective, or be reinstated, as if such payment had not been made, if at any time any payment of any portion of the Guaranteed Debt is rescinded or must be restored or returned by Lender to Borrower upon the insolvency or bankruptcy of the Borrower or otherwise This Guaranty shall: (i) bind Guarantor and Guarantor's executors, administrators, successors and assigns, provided that Guarantor may not assign rights or obligations under this Guaranty without Lender's prior written consent; and (ii) inure to the benefit of Lender and its successors and assigns.

4. SUBORDINATION OF BORROWER OBLIGATIONS TO GUARANTOR

Guarantor subordinates the payment of all obligations and indebtedness of Borrower owing to Guarantor, whether now existing or hereafter arising, to the payment in full of the Guaranteed Debt to Lender. In the event that acceleration under the Note is stayed, upon the insolvency or bankruptcy of Borrower, or otherwise, the Guaranteed Debt shall nonetheless be immediately payable by Guarantor upon Lender's demand.

5. GUARANTOR'S WAIVER OF SUBROGATION RIGHT

Guarantor hereby waives, and agrees not to exercise, any right of subrogation, contribution or similar rights with respect to any payments Guarantor is obligated to make under this Guaranty until the entire Guaranteed Debt, and any amounts payable under this Guaranty, are paid in full. Any amounts paid to Guarantor by Borrower in violation of the foregoing limitation will be held, in trust, by Guarantor for Lender's benefit and shall be immediately paid to Lender to reduce the amount of the Guaranteed Debt, whether matured or unmatured.

6. GUARANTOR FINANCIAL INFORMATION

Until the Guaranteed Debt is paid in full, Guarantor will promptly furnish to Lender any and all financial, or other information, regarding Guarantor or Guarantor's assets and property, whether personal or real, as Lender may request in writing.

7. LENDER'S COSTS AND EXPENSES OF ENFORCING THIS GUARANTY

Guarantor shall pay, on demand, all costs and expenses of Lender including, but not limited to, attorneys' fees and court costs, in any way relating to the enforcement or protection of Lender's rights under this Guaranty. Guarantor's obligations under the preceding sentence will survive termination of this Guaranty.

8. WAIVER OF NOTICES

Guarantor waives notice of the acceptance of this Guaranty and of the extension or continuation of the Guaranteed Debt or any part thereof. Guarantor further waives presentment, protest, or demand.

9. WAIVER OF REQUIREMENT THAT LENDER FIRST SEEK COLLECTION FROM BORROWER

GUARANTOR WAIVES ANY REQUIREMENT THAT LENDER FIRST SEEK PAYMENT FROM OR COLLECTION AGAINST BORROWER, OR OTHERWISE EXHAUST ANY RIGHT OR REMEDY, OR TO TAKE ANY OTHER ACTION AGAINST BORROWER, BEFORE EXCERCISING AND ENFORCING ITS RIGHTS UNDER THIS GUARANTY, GUARANTOR FURTHER WAIVES ANY RIGHT TO SERVE NOTICE ON LENDER REQUIRING LENDER TO TAKE SUCH ACTIONS.

10. GOVERNING LAW, CHOICE OF FORUM

Guarantor acknowledges that: (i) this Guaranty is effective when received by Lender at its offices in Kennesaw, Georgia; (ii) Lender completed its underwriting process concerning Guarantor at its offices in Kennesaw, Georgia; and (iii) Guarantor's obligation under this Guaranty upon the happening of a Event of Default under the Note, will be deemed satisfied when full payment of the Guaranteed Debt is received by Lender at its offices in Kennesaw, Georgia.

11. NOTICES

All notices permitted or required under this Guaranty shall be effective only if in writing addressed to the addressee Party. Any changes of address shall be provided promptly to the other Party. Notice shall be deemed to have been given and received when actually received, but in no event later than: (i) the date delivered to the Party by messenger; (ii) one business day after e-mailing; (iii) five business days after mailing within the United States by certified or registered mail; (iv) two business days after the date deposited with an overnight courier for next day delivery; or (v) one business day after transmission by facsimile.

Any notice to Guarantor will be provided at the address, facsimile number, or email address shown at the beginning of this Note. Any notice to Lender will be provided at the address shown in paragraph 2 of this Guaranty or the address of any subsequent assignee of the Note and this Guaranty.

12. NO WAIVER OF REMEDIES

No failure by Lender to exercise, and no delay in exercising, any right, remedy or power hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy or power hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

13. FINAL AGREEMENT

This Guaranty constitutes the final agreement of Guarantor and Lender with regard to this Guaranty. This Guaranty may not be modified, amended, waived, extended, changed, discharged, or terminated by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing executed by Guarantor and Lender.

14. SEVERABILITY

A determination that any provision of this Guaranty is invalid or unenforceable shall not affect the validity or enforceability of any other provision. The remaining provisions of this Guaranty shall remain operative and in full force and effect and shall not be affected by such determination.

15. CREDIT REPORTING

Guarantor authorizes Lender to obtain consumer reports on Guarantor at any time before the Note is paid in full. Guarantor acknowledges that its performance and/or default under this Guaranty may be reported by Lender to consumer reporting agencies.

16. ELECTRONIC CONTRACTING AGREEMENT

Guarantor agrees that this Guaranty is an electronic record executed using an electronic signature. Guarantor agrees that, by executing this Guaranty with an electronic signature, Guarantor is signifying an intent to enter into this Guaranty and that this Guaranty is legally valid and enforceable in accordance with its terms to the same extent as if it had been executed using Guarantor's written signature.

17. NO ASSIGNMENT BY GUARANTOR

Guarantor may not assign obligations under this Guaranty without Lender's written agreement.

18. NOTICE TO GUARANTOR

By executing this Guaranty you will be required to pay the Guaranteed Debt described above if Borrower defaults on its obligation under the Note. You should consider this undertaking carefully and should consider consulting with counsel before executing this Guaranty. If Borrower does not pay the Guaranteed Debt, you must do so.

You are advised that Lender may collect the Guaranteed Debt from you without first trying to collect the Guaranteed Debt from Borrower. Lender may use the same collection methods against You as may be used against Borrower including, but not limited to, pursuing recovery through lawsuits or judicial proceedings in a court of competent jurisdiction to recover the Guaranteed Debt through garnishment or other permitted processes or methods.

# 90 PLEASANT VALLEY STREET LEASING LLC XC

Final Audit Report 2026-03-23

| | |
|---|---|
| Created: | 2026-03-23 |
| By: | Danielle Johnson (djohnson@ioufinancial.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAEiOqE8eujitLXPxxaCSvNC4ZyJPKWfmX |

## "90 PLEASANT VALLEY STREET LEASING LLC XC" History

Document created by Danielle Johnson (djohnson@ioufinancial.com)
2026-03-23 - 5:31:51 PM GMT

Document emailed to Michael Shabsels (mshabsels@gmail.com) for signature
2026-03-23 - 5:31:55 PM GMT

Email viewed by Michael Shabsels (mshabsels@gmail.com)
2026-03-23 - 5:33:57 PM GMT

Document e-signed by Michael Shabsels (mshabsels@gmail.com)
Signature Date: 2026-03-23 - 5:37:06 PM GMT - Time Source: server

Agreement completed.
2026-03-23 - 5:37:06 PM GMT