Nicholas Fitzgerald, Esq. (N.J. Attorney ID 044651984)
FITZGERALD & ASSOCIATES, P.C.
649 Newark Avenue
Jersey City, New Jersey 07306
Telephone: (201) 533-1100
Email: nickfitz.law@gmail.com
Attorneys for Plaintiff Jeremy David Benlolo

Alexander R. Tiktin, Esq. (*pro hac vice* application pending)
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
Telephone: (212) 216-8099
Email: atiktin@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| DAVID ARTHUR SHABSELS, | Case No. 26-16530-CMG |
| *Debtor.* | Judge: Christine M. Gravelle |
| JEREMY DAVID BENLOLO, | Adv. Pro. No. ______________ |
| *Plaintiff,* | |
| v. | |
| DAVID ARTHUR SHABSELS, | |
| *Defendant.* | |

**PLAINTIFF JEREMY DAVID BENLOLO'S COMPLAINT TO DETERMINE THAT A DEBT IS EXCEPTED FROM DISCHARGE UNDER 11 U.S.C. § 523(a)(2)(A)**

Plaintiff Jeremy David Benlolo (**"Benlolo"** or **"Plaintiff"**), by his attorneys, brings this adversary proceeding against Defendant David Arthur Shabsels (**"David Shabsels"** or

**"Defendant"**) to determine that the debt described below is excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A) and 1141(d)(2), and alleges as follows:

## NATURE OF THE ACTION

1. Michael Aaron Shabsels (**"Michael"**) and his brother, David Shabsels (together, the **"Shabsels"**), engaged Benlolo to locate and help acquire income-producing real estate for them. They told Benlolo that he would own 20% of the entities through which any property he located would be acquired. Benlolo located two Oklahoma apartment complexes and worked on their purchase and financing through closing.

2. On February 4, 2019, while asking Benlolo to authorize a lender to search his personal credit and financial history, Michael wrote: "In order for you to be an owner of the OKC entities, the lender needs to perform searches." On February 7, 2019, Benlolo asked in writing "what my place is in the structure of this deal." Michael answered: "You're going to own 20%."

3. David Shabsels was a party to the telephone calls and in-person meetings in which the Shabsels told Benlolo he would own 20%, and made that representation himself. The Letters of Interest stated that the buyer would be "an LLC controlled by Michael and David Shabsels," and David Shabsels executed his own lender materials for the same financing in the same month.

4. In reliance on the 20% Representation, Benlolo performed the services requested of him and executed every credit authorization, application, lender questionnaire, and other document the Shabsels and their lenders required of him to close.

5. Within weeks, both properties were encumbered for $10,850,000 through an entity different from the two entities in which Benlolo had been told he would be an owner. Title

was later taken in two other entities controlled by the Shabsels. Benlolo received no interest in any entity that acquired, financed, or holds either property.

6. Benlolo seeks a determination that the debt the Shabsels owe him for the services they obtained through that false representation is excepted from discharge.

**JURISDICTION, VENUE, CORE STATUS, CONSENT, AND TIMELINESS**

7. This adversary proceeding relates to *In re David Arthur Shabsels*, Case No. 26-16530-CMG, a case under Chapter 11 of title 11 pending in the United States Bankruptcy Court for the District of New Jersey, Trenton vicinage (the **"Bankruptcy Case"**).

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1334(b). The United States District Court for the District of New Jersey has referred the Bankruptcy Case and related proceedings to the bankruptcy judges of this district under 28 U.S.C. § 157(a), the Standing Order of Reference dated July 23, 1984, Standing Order 12-1 dated September 18, 2012, and Standing Order 2025-02 dated June 6, 2025.

9. This proceeding is commenced by filing this Complaint under Fed. R. Bankr. P. 7003 and Fed. R. Civ. P. 3. A proceeding to determine the dischargeability of a debt is an adversary proceeding under Fed. R. Bankr. P. 7001(f) and a core proceeding under 28 U.S.C. § 157(b)(2)(I).

10. Under Fed. R. Bankr. P. 7008, Plaintiff consents to the entry of final orders and judgment by the Bankruptcy Court.

11. Venue is proper under 28 U.S.C. § 1409(a) because the Bankruptcy Case is pending in this District. This Court has personal jurisdiction over David Shabsels under Fed. R. Bankr. P. 7004(d) and (f).

12. David Shabsels filed a voluntary Chapter 11 petition in the Bankruptcy Case on June 4, 2026. (Main Case Dkt. 1.) The Notice of Chapter 11 Bankruptcy Case entered on June 30, 2026 at Docket No. 70 set July 17, 2026 as the first date for the meeting of creditors under 11 U.S.C. § 341(a) and September 15, 2026 as the deadline to file a complaint under 11 U.S.C. § 523(c). (Main Case Dkt. 70.)

13. This Complaint is filed on September 15, 2026, within sixty days after the first date set for the meeting of creditors, and is timely under Fed. R. Bankr. P. 4007(c) and 11 U.S.C. § 523(c)(1).

14. Plaintiff is the creditor to whom the debt described in this Complaint is owed within the meaning of 11 U.S.C. § 523(c)(1). The Shabsels engaged Benlolo personally, directed that payments be made to him personally, and made the 20% Representation to him personally.

**THE PARTIES AND RELEVANT ENTITIES**

15. Plaintiff Jeremy David Benlolo is an individual residing at 41 Allenwood Road, Great Neck, New York 11023. Benlolo uses his middle name and is the "David" addressed in the emails quoted below.

16. During the period in which he performed the services described below, Benlolo was licensed by the State of New York as a real estate salesperson associated with Curb Realty Inc.

17. Defendant David Arthur Shabsels is an individual and the debtor in the Bankruptcy Case. His petition states his address as 60 Carthage Road, Scarsdale, New York 10583, states that his debts are primarily business debts, and states as the reason for filing in this District that cases of his affiliates are pending here. (Main Case Dkt. 1 at 2, 7.)

18. Michael Aaron Shabsels is David Shabsels' brother and the debtor in *In re Michael Aaron Shabsels*, Case No. 26-16529-CMG, a separate Chapter 11 case pending in this Court. Michael is not a defendant in this adversary proceeding. Benlolo has commenced a separate adversary proceeding against Michael in his case on the same facts.

19. 4215 SE 53rd Street Real Estate LLC and 1800 North Rockwell Avenue Real Estate LLC are the two Oklahoma limited liability companies named in the operating agreements the Shabsels sent Benlolo (together, the **"Oklahoma Companies"**). Each agreement identifies Michael as Manager and SIMAD Holdings LLC, in care of Michael, as the holder of the remaining interest.

20. 1800 & 4215 Oklahoma Realty LLC is the entity that encumbered both Oklahoma properties on March 6, 2019 (the **"Financing Entity"**). Arbor Capital Partners Investment Trust is the New York trust named as Purchaser in each of the August 2018 purchase agreements (the **"Contract Purchaser"**).

21. Highland Park Partners LLC and Belmont Apartment Partners LLC are the entities in which correction deeds recorded in December 2021 vested title to the two properties (together, the **"Title Entities"**). They are debtors in separate Chapter 11 cases in this Court, Nos. 26-16510 and 26-16528, jointly administered with the cases of other entities affiliated with the Shabsels. They are not defendants here.

## FACTUAL ALLEGATIONS

### The Engagement and the Promise of a 20% Interest

22. On February 7, 2018 at 5:23 p.m., Michael emailed Benlolo and Randy Mittasch, the Shabsels' accountant: "Beginning tomorrow, David will be consulting for us. The remuneration for his consulting services will be $4,166.66 per month." Michael directed

Mittasch to arrange electronic monthly payments to Benlolo. Benlolo began work on February 8, 2018.

23. The monthly fee was not a commission, a percentage of any purchase price, or contingent on a closing. Neither Letter of Interest nor either purchase agreement for the Oklahoma Properties identifies Benlolo as a broker; each identifies only the sellers' broker and makes the seller responsible for its fee.

24. Michael and David Shabsels pursued the acquisition of the Oklahoma Properties together. The engagement email engaged Benlolo to consult "for us." The Letters of Interest stated that the buyer would be "an LLC controlled by Michael and David Shabsels." Both brothers executed personal lender materials for the financing. Entities controlled by the Shabsels took title.

25. Throughout the engagement, in telephone calls and in-person meetings among Michael, David Shabsels, and Benlolo, the Shabsels told Benlolo that he would own 20% of the entities through which the properties he located would be acquired. David Shabsels was a party to those discussions and made that representation himself.

26. In their joint September 12, 2025 answer in the state-court action described below (the **"Answer"**), which defines "Shabsels" as Michael and David Shabsels, both brothers admitted that Benlolo was retained "to perform services for him for an annual salary of $50,000," that Benlolo performed services, that "entities controlled by Shabsels own properties in Oklahoma," and that Benlolo "has made demands on the Shabsels." (Answer, *Benlolo v. Shabsels*, Index No. 655126/2024 (Sup. Ct. N.Y. County), NYSCEF Doc. No. 40 ¶¶ 2, 3, 5, 11, 13.)

**Benlolo Locates the Oklahoma Properties**

27. On May 9, 2018, Michael instructed Benlolo to concentrate on purchases of at least $10 million. Benlolo located two off-market Oklahoma apartment complexes: The Commons at 4215 SE 53rd Street in Oklahoma City and The Belmont at 1800 North Rockwell Avenue in Bethany (together, the **"Oklahoma Properties"**).

28. Benlolo's work on the Oklahoma Properties included market research, property screening, financial analysis, underwriting, letters of interest, purchase-agreement review, due diligence, transaction communications, deadline tracking, and cooperation with the Shabsels' lenders through closing.

29. Michael sent the Letters of Interest for both Oklahoma Properties to the sellers' broker on July 3, 2018. Each states: "The Buyer will be an LLC controlled by Michael and David Shabsels." Purchase agreements dated August 1 and August 3, 2018 set purchase prices of $7.8 million for The Commons and $7.7 million for The Belmont. Each names the Contract Purchaser as Purchaser.

**Michael Links Benlolo's Lender Disclosures to His Ownership**

30. On February 4, 2019 at 9:56 p.m., Michael forwarded Benlolo a lender contact's request that Benlolo execute a credit authorization so the lender could perform litigation, lien, and credit searches. The lender's request did not refer to ownership. Michael added: "In order for you to be an owner of the OKC entities, the lender needs to perform searches (all customary and routine, but needing to be done, nevertheless)."

31. By that statement, Michael represented that the reason Benlolo was being asked to submit to a personal credit search was that Benlolo was to be an owner of the entities through which the Oklahoma Properties would be acquired and financed.

32. Benlolo signed and returned the authorization on February 5, 2019 because he expected to receive his 20% interest under his agreement with the Shabsels.

**The 20% Representation**

33. On February 7, 2019 at 1:44 p.m., Michael asked Benlolo to sign and return a second credit-authorization form so another lender could run a credit check. At 2:12 p.m., Benlolo asked in writing: "would you kindly advise on what my place is in the structure of this deal?" At 2:39 p.m., Michael replied in full:

> David,
> You're going to own 20%.
> Regards,
> Mike

34. That statement (the **"20% Representation"**) confirmed in writing what the Shabsels had told Benlolo throughout the engagement. It stated no condition, contingency, capital requirement, or further step. At 3:27 p.m., forty-eight minutes later, Benlolo returned the completed credit application.

**The Shabsels Obtain Benlolo's Remaining Lender Submissions and Send Ownership Documents**

35. On February 19, 2019 at 9:11 a.m., Michael sent Benlolo an Icon Real Estate Capital credit-authorization form, wrote that he and David Shabsels had completed and executed the same form the prior week, and asked Benlolo to complete, sign, and send it to Icon's Jon Cruz. At 9:39 a.m., Benlolo did so, copying Michael.

36. On February 25, 2019 at 6:01 p.m., Michael sent Benlolo operating agreements for the Oklahoma Companies, "signed by me where appropriate," asked Benlolo to sign and return them, and stated that "we're trying to close on Thursday." Exhibit 1 to each agreement identifies Benlolo as "20% Owner" holding "160 Units."

37. On February 27, 2019 at 1:49 p.m., Michael emailed Benlolo a lender questionnaire: "It has already been filled out (but please proof it for accuracy), so please sign and return." As transmitted, the form identified "Jeremy David Benlolo," his title as "Member," and the date as February 21, 2019. Benlolo did not supply that entry or date; Michael or a person acting at his direction did. At 2:07 p.m., eighteen minutes later, Benlolo returned it with his handwritten signature.

38. On March 4, 2019, Benlolo sent Michael proposed changes to the operating agreements to protect his 20% interest, including protections concerning dilution, a sale of the properties, and the return of capital before pro rata distributions.

**What Was True When the 20% Representation Was Made**

39. On February 4 and February 7, 2019, both Oklahoma Properties were under contract to the Contract Purchaser. Neither Oklahoma Company was a party to either purchase agreement, held any recorded interest in either Oklahoma Property, or had been assigned any interest in either property or either purchase agreement.

40. Neither Michael nor David Shabsels told Benlolo, then or afterward, that the Oklahoma Properties were under contract to the Contract Purchaser, that neither Oklahoma Company was a party to either purchase agreement, or that the Oklahoma Companies would take no interest in either property.

**A Different Entity Encumbers the Oklahoma Properties**

41. On March 6, 2019, nine days after the operating agreements were sent and twenty-seven days after the 20% Representation, the Financing Entity executed a mortgage to TGB Funding LLC securing a $10.85 million note and encumbering both Oklahoma Properties. The mortgage was recorded on March 8, 2019.

42. Neither Oklahoma Company appears in the title reports effective in November 2023 as having acquired, financed, mortgaged, or taken any recorded interest in either Oklahoma Property.

43. No writing in the parties' correspondence informed Benlolo that the Financing Entity had encumbered the Oklahoma Properties or that the Oklahoma Companies had not acquired or financed them.

**The Shabsels Continue to Hold Out the 20% Interest**

44. Operating agreements dated May 10, 2019 continued to identify Benlolo as a 20% owner of the Oklahoma Companies. Michael sent them to Benlolo on July 9, 2019 and asked him to sign and return them.

45. At no time did Michael or David Shabsels withdraw or correct the 20% Representation, the operating agreements identifying Benlolo as a 20% owner, or the prefilled "Member" designation.

**Benlolo Performs**

46. In reliance on the 20% Representation, Benlolo performed all of the services requested of him and executed every credit authorization, application, questionnaire, and other document the Shabsels and their lenders required of him to close the acquisitions.

47. Benlolo would not have performed those services or executed those documents had he been told that the Oklahoma Properties would be acquired and financed through entities in which he would hold no interest.

**Benlolo Receives No Interest**

48. In September 2021, the Financing Entity executed quitclaim deeds conveying the Oklahoma Properties to the Title Entities. Correction deeds recorded on December 21, 2021

vested The Commons in Highland Park Partners LLC and The Belmont in Belmont Apartment Partners LLC. Michael signed a correction deed as manager of Belmont Apartment Partners LLC.

49. Neither the Financing Entity nor either Title Entity issued Benlolo a membership interest. Benlolo has never received a distribution from any entity that acquired, financed, or holds either Oklahoma Property. Benlolo demanded his 20% interest; the Answer admits the demands. (Answer ¶ 5.)

**The State Action**

50. On September 18, 2024, Benlolo commenced *Benlolo v. Shabsels*, Index No. 655126/2024, in the Supreme Court of the State of New York, New York County (the **"State Action"**), against Michael, David Shabsels, and the Title Entities, asserting the state-law claims from which the debt alleged here arises.

51. By Decision and Order dated August 19, 2025 (the **"State Decision"**), the state court, on a pre-answer motion addressed to the pleadings, declined to dismiss the fraudulent-inducement, promissory-estoppel, and unjust-enrichment claims against Michael and David Shabsels. It held that the complaint "sufficiently states that the Shabsels 'knowingly uttered a falsehood intending to deprive the plaintiff of a benefit and that the plaintiff was thereby deceived and damaged.'" (State Decision, NYSCEF Doc. No. 38 at 5-8.)

52. The state court held that Benlolo's claims accrued in September 2021, when the Shabsels failed to grant him his 20% interest at the closings, and that the applicable limitations periods are six years, so that the State Action, commenced September 18, 2024, is timely. (State Decision at 7.)

53. David Shabsels' petition stayed the State Action against him under 11 U.S.C. § 362(a). The State Action remains pending. The debt remains enforceable against David Shabsels under applicable nonbankruptcy law, and under 11 U.S.C. § 108(c) the period for continuing the State Action does not expire before thirty days after notice of the termination or expiration of the stay.

**The Debt**

54. The debt alleged here is a debt for services within the meaning of 11 U.S.C. § 523(a)(2)(A). The Shabsels obtained Benlolo's services locating, analyzing, negotiating, and closing the acquisition and financing of the Oklahoma Properties, and his personal lender submissions, through the 20% Representation.

55. The debt arises under New York law on the fraudulent-inducement, promissory-estoppel, and unjust-enrichment claims pending in the State Action.

56. As pleaded in the State Action, Benlolo's damages are the value of his 20% interest in The Commons and The Belmont and his share of the distributions from those properties, in an amount to be determined at trial and believed to exceed $3,500,000.

**FIRST CLAIM FOR RELIEF**

**(11 U.S.C. §§ 523(a)(2)(A) and 1141(d)(2))**

**False Representation and False Pretenses, Pleaded in the Alternative**

57. Plaintiff repeats and realleges paragraphs 1 through 56.

**The Representations**

58. The representation on which this claim is based is the 20% Representation: that Benlolo would own 20% of the entities through which the Oklahoma Properties would be acquired and financed, and that the Oklahoma Companies were those entities. The Shabsels

made it orally throughout the engagement, in the calls and meetings alleged in paragraph 25, and Michael confirmed it in writing on February 7, 2019.

59. The Shabsels reinforced the 20% Representation through the February 4, 2019 statement that lender searches were required "[i]n order for you to be an owner of the OKC entities," the operating agreements identifying Benlolo as a 20% owner, and the prefilled "Member" questionnaire (together with the 20% Representation, the **"Ownership Statements"**).

60. The 20% Representation asserted Benlolo's then-existing place in the transaction structure and communicated the Shabsels' then-existing intention concerning that place. The February 4 statement asserted the then-existing reason the lender was being asked to search Benlolo personally. None was a statement respecting the financial condition of David Shabsels, Michael, or an insider; the financial information in the lender forms was Benlolo's own.

61. David Shabsels made the 20% Representation himself, in the calls and meetings alleged in paragraph 25, and knew of and adopted Michael's written confirmation of it.

62. David Shabsels is also liable for the debt because Michael made the Ownership Statements within the scope of the brothers' joint acquisition of the Oklahoma Properties, alleged in paragraph 24, to obtain from Benlolo services and lender submissions required for that acquisition and its financing. Under New York law, each participant in a joint venture is liable for the fraud of a co-venturer committed within the scope of the venture. N.Y. Partnership Law §§ 24, 26(a)(1). Section 523(a)(2)(A) excepts from discharge a debt for services obtained by fraud without regard to which participant made the statement.

**Falsity, Knowledge, and Intent**

63. The 20% Representation was false. Benlolo never received a 20% interest in any entity through which the Oklahoma Properties were acquired, financed, or held. When the 20%

Representation was made, both Oklahoma Properties were under contract to the Contract Purchaser, and neither Oklahoma Company was a party to either purchase agreement or held any interest in either property. Nine days after the operating agreements naming Benlolo a 20% owner were sent, the properties were financed through the Financing Entity, and title was later taken in the Title Entities. Neither Oklahoma Company ever appears in the recorded chain of title. Those facts evidence the falsity of the 20% Representation when it was made.

64. Upon information and belief, when the Ownership Statements were made, neither Michael nor David Shabsels intended that Benlolo receive the 20% interest described.

65. The facts supporting that inference are that the Shabsels selected the buying structure; Michael dealt directly with the lenders and transmitted four sets of lender materials to Benlolo within twenty-three days; Michael sent the operating agreements on February 25, 2019 saying the transaction would close that Thursday; within nine days the properties were financed through an entity in which neither Benlolo nor either brother was identified as a member; and neither brother disclosed that structure to Benlolo while continuing, through July 2019, to send him agreements identifying him as a 20% owner.

66. David Shabsels knew the actual acquisition and financing structure when the Ownership Statements were made. He was to control the buying entity with Michael under the Letters of Interest, executed his own lender materials for the financing in February 2019, was a party to the calls and meetings alleged in paragraph 25, and controls the Title Entities with Michael.

67. The timing and sequence alleged above support the inference that the Ownership Statements were made to induce Benlolo to continue performing, to disclose his personal credit

and financial information, to execute lender materials, and to cooperate with the financing through closing.

**Actual and Justifiable Reliance**

68. Benlolo believed the Ownership Statements. Because of them he continued to perform, returned the Arbor authorization on February 5, 2019, returned the UC Funding application forty-eight minutes after the 20% Representation on February 7, 2019, sent the Icon authorization on February 19, 2019, returned the prefilled questionnaire eighteen minutes after receiving it on February 27, 2019, proposed revisions to the operating agreements on March 4, 2019, and cooperated with the financing and the closings.

69. Benlolo did not know the facts alleged in paragraphs 39, 41, and 42. Nothing on the face of the lender forms or the operating agreements disclosed them. Every time he asked about his ownership, the Shabsels answered with a statement or a document naming him a 20% owner.

70. Benlolo's reliance was justifiable. The Shabsels supplied the stated reason for the personal searches, answered his direct written question in writing, dealt directly with the lenders, sent operating agreements consistent with the 20% Representation, sent a prefilled "Member" questionnaire, and withheld the contrary transaction and financing structure.

71. Benlolo would not have performed the services or executed the documents alleged in paragraph 46 had the facts alleged in paragraphs 39, 41, and 42 been disclosed.

**The Services Obtained and the Resulting Debt**

72. Through the Ownership Statements, the Shabsels obtained from Benlolo the services alleged in paragraphs 28 and 46 for their acquisition and financing of the Oklahoma

Properties. David Shabsels benefited from those services as a co-venturer in the acquisition and as a principal of the entities that took title.

73. The Ownership Statements were a substantial factor in causing Benlolo to render those services, and the Shabsels' failure to provide the promised 20% interest proximately caused the damages alleged in paragraph 56.

74. In the alternative to false representation, the Shabsels created and fostered false pretenses through the course of conduct alleged in paragraphs 58 through 67: they told Benlolo he would own 20%, then continued to obtain his services and personal disclosures without correcting that statement or disclosing the facts alleged in paragraphs 39, 41, and 42, leaving the ownership understanding they had created materially misleading.

75. The debt arising from those false representations and false pretenses is excepted from discharge under 11 U.S.C. § 523(a)(2)(A). David Shabsels is an individual debtor in a Chapter 11 case; under 11 U.S.C. § 1141(d)(2), confirmation of a plan does not discharge him from a debt excepted from discharge under 11 U.S.C. § 523.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Jeremy David Benlolo respectfully requests that the Court enter judgment:

A. Determining that the debt owed by David Arthur Shabsels to Plaintiff arising from the conduct alleged above, in the amount determined in the State Action or otherwise established, is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), and that 11 U.S.C. § 1141(d)(2) prevents confirmation of a plan from discharging that debt;

B. Awarding taxable costs; and

C. Granting such other and further relief as the Court deems just.

Dated: Jersey City, New Jersey
September 15, 2026

Respectfully submitted,

**FITZGERALD & ASSOCIATES, P.C.**
*Attorneys for Plaintiff Jeremy David Benlolo*

/s/
Nicholas Fitzgerald, Esq.
N.J. Attorney ID 044651984
649 Newark Avenue
Jersey City, New Jersey 07306
Telephone: (201) 533-1100
Email: nickfitz.law@gmail.com

Of counsel (*pro hac vice* application pending):
**TARTER KRINSKY & DROGIN LLP**
Alexander R. Tiktin, Esq.
1350 Broadway
New York, New York 10018
Telephone: (212) 216-8099
Email: atiktin@tarterkrinsky.com

and
**YAZDAN LLP**
Michael Yazdan, Esq.
79 Watermill Lane
Great Neck, New York 11021
Telephone: (516) 707-8924
Email: Michael@Yazdanlegal.com